MILLIGAN (CRAWFORD v.). See Case No. 3,370.

---

## Case No. 9,603.

### MILLIGAN & DICKSON et al.

[Pet. C. C. 433.] [1]

Circuit Court, D. Pennsylvania. April Term, 1817.

ACKNOWLEDGMENT — POWER OF ATTORNEY — PENNSYLVANIA ACT—EVIDENCE OF EXECUTION.

1. A deed for land, made under a power of attorney acknowledged before a mayor or other chief magistrate of a city, instead of being proved before him by the witnesses, and certified by him under the public seal, is evidence under the common law of Pennsylvania, notwithstanding the act of 1705.

2. The provisions of the act of 1705, apply to a power of attorney, proved by the attesting witnesses, but they do not exclude other evidence of the execution of such power.

[See Case No. 9,604.]

[Cited in brief in Garrett v. Crosson, 32 Pa. St. 376.]

This cause, which had been removed into the supreme court, upon a division in the opinion of the judges, as to the admissibility of the power of attorney from Christie to Milligan, was sent back to this court, under an agreement of the parties, that this should be the single question to be decided. It came on now, to be again tried, when the plaintiff examined a number of witnesses, including lawyers, conveyancers, and a clerk in

---

[1] [Reported by Richard Peters, Jr., Esq.]

the office of the master of rolls, and for recording of deeds; all of whom concurred in proving, that the universal practice of this state has been, to make conveyances under powers of attorney, acknowledged before a mayor, or other chief magistrate or officer of the city, &c. where such power was executed, and certified under the common or public seal of the said city, in like manner as if the same had been proved by the attesting witnesses. That powers of attorney thus certified, have uniformly been admitted to be recorded in this state, copies whereof have always been given in evidence; and that an objection to such evidence, never was heard of, until it was made on the first trial of this case. That an immense portion of the landed property in this state, is held under deeds executed by the attorneys of the proprietors and others, in virtue of powers, acknowledged and certified as this was.

Some of the witnesses stated it as their opinion, from an examination of the records, and from their recollection of the deeds which had been drawn in their respective offices, that a very great majority of the powers of attorney for conveying real property in this state, have been of this description. That the most eminent lawyers and conveyancers in the state, had uniformly acted in conformity with this opinion. The evidence of some of the witnesses, traced their knowledge of this practice as far back as fifty or sixty years ago; at which time, they found the practice established and in use in the offices in which they entered as apprentices or assistants. The testimony of the witnesses, as to this practice or usage, its antiquity, uniformity, and extent, was uncontroverted. Only one witness was examined by the defendants' counsel, namely, Mr. Chief Justice Tilghman, who stated, that he had received powers of attorney from Andrew Allen, in London, chief justice of this state, before the Revolution, and from other members of that family, for the sale of their real property in this state, all of which were acknowledged and certified like the present. This was in the year 1809. That, after examining the act of 1705, he returned those powers to his constituents, and directed them to have them proved before the mayor or magistrate. But, the chief justice stated nothing, in opposition to the practice proved by the other witnesses. He further stated, that although the law requires the certificate of the magistrate of the proof of deeds before him, to be authenticated under the common or public seal of the city, yet a long usage of certifying the proof without such seal, had grown up, and had received the sanction of the supreme court of the state, on the ground of such usage.

The plaintiff proved the loss of the original power of attorney; the paper now offered in evidence, was a copy of the exemplification of the power, from the office for recording deeds, where the exemplification was recorded. [Davey v. Turner] 1 Dall. [1 U. S.] 11; [Lloyd v. Taylor] Id. 17; [Morris v. Vanderen] Id. 66.

WASHINGTON, Circuit Justice. When this cause was formerly tried, the only question which I could judicially decide, was, whether under the words of the act of 1705, a power of attorney acknowledged before the mayor or chief magistrate of a city, and certified under the public or common seal, could be given in evidence. That act declares, that all sales or conveyances of lands thereafter to be made, by virtue of any letters of attorney, duly executed, and expressly giving a power to sell lands or other estates, certified to have been proved by two or more of the witnesses thereunto, before any mayor or chief magistrate of a city, &c. under the common seal, &c., or proved in Pennsylvania before any justice of the peace, by one or more of the witnesses thereto, &c. shall be good and effectual in law, to all intents and purposes, whatsoever, as if the said constituent had by his deed conveyed the same.

Upon the construction of this law, it appeared to me there could scarcely be two opinions. It allowed powers of attorney, proved as the law directs, by the attesting witnesses, to be given in evidence; but it did not extend the same privilege to powers acknowledged by the party. The former case, therefore, was no longer open to the common law objection, that a deed must be proved upon the trial of a cause in which it is offered, by the attesting witnesses, if they can be produced, subject to the legal exceptions and qualifications of the rule. The latter case was left exposed to the full operation of that principle, as it was not provided for by this statute. There was no testimony given of a practice and usage like that which has been proved in this case. It is true, Judge Peters stated to me the general understanding of legal and other men, upon this subject, substantially, as he has now testified. But no proof of such a practice was given, so that I could act judicially upon it, or to enable the supreme court to judge how far such practice had controlled or affected the principle of the common law. I could not therefore, give any other opinion than the one I did, which was unfavourable to this evidence.

This trial presents a perfectly new case, upon the evidence which has been given.

It is contended by the defendants' counsel, that no practice or usage can repeal or control an express statute; and that for this reason the cases of Davey v. Turner, 1 Dall. [1 U. S.] 11, and the lessee of Lloyd v. Taylor, Id. 17, in which it was decided, that a feme covert had legally parted with her estate by being privily examined without a fine being levied, and even by the mere joining her husband in the deed, are no authority in this case; because, the long and uniform practice, which, by those decisions, sanctions this mode of disposing of her estate, violated no statute of this state, but merely a rule of the

common law, which required a -fine to be levied, in order to bind the estate of a feme covert. Now, admit for a moment, that a usage, however ancient, cannot control or vary the plain interpretation of a statute; still it is obvious, that the error of the argument consists in supposing that the usage set up in this case, is at variance with the provisions of the act of 1705. That act provides merely for the case of powers of attorney, proved by the attesting witness, but it does not exclude other modes of proof. It does not declare that the acknowledgment of the party shall not be sufficient, or that the certificate of the magistrate shall be sufficient to authenticate the instrument in no instance, but where the execution of it is proved by the witnesses thereto. All that can be said is, that the acknowledgment before the magistrate is not provided for; and therefore, upon common law rules, the certificate of the acknowledgment could not be received as evidence of the execution. Here, then, the practice, coeval, it is probable, with the act of 1705, and certainly extending beyond the memory of man, steps in and supplies the omission in the law to provide for the case. This practice originated, no doubt, in the opinion, that the acknowledgment of a deed is equivalent to proof by witnesses, and that, therefore, it was within the equity of the statute. This opinion became practically embodied into the land titles of this state; insomuch that we find, as far back as the recollection of the oldest witness, who has been examined extends, foreign powers of attorney were certified upon the acknowledgment of the party who gave them, and that this mode of proving the execution was much more practised than the other. What is this, then, but a usage or common law of the state, controlling the common law of England; supplying an omission in the statute law of the state, not violating any one of its provisions? In this view of the subject, then, it is plain that the cases cited from 1 Dall. [1 U. S.] have settled a principle which is strictly applicable to this case.

The witnesses who have been examined as to the usage asserted in this case, do not recollect that this question has ever been directly decided in the courts of this state; if it had, I presume it would not now be contested. But, I would ask, what stronger evidence can we have that the usage has become incorporated into the law of this state, than the uniform admission of deeds, executed under powers of attorney so acknowledged and certified as evidence of their execution, by all the courts, without an objection having been made, either at the bar or on the bench? If the objection was never taken, it must have been because the law was understood to be too plain to be controverted.

This usage, then, forms one of the great and essential land marks of real property in this state; and if the titles depending upon it are to be uprooted at this day, I will not be

the judge to commence this work of devastation. Never was there a case where the principle communis error facit jus, was more strictly, and necessarily applicable.

It is therefore the opinion of the court, that the evidence which has been offered ought to go to the jury; and if, upon the evidence which has been given, they are satisfied that the usage as I have stated it, has been proved, their verdict ought to be for the plaintiff.

Verdict for plaintiff.